**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | |
|---|---|
| BARRY JENKINS, INDIVIDUALLY AS ) <br> NEXT OF KIN, AND AS ) <br> ADMINISTRATOR FOR ) <br> THE ESTATE OF ) <br> LAWRENCE JENKINS, DECEASED, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br>     Defendant. ) <br> _____) | CIVIL ACTION FILE <br><br> NO. _____ |

## COMPLAINT

Come Now Plaintiffs, Barry Jenkins, individually and as the duly appointed Administrator for the Estate of Veteran Lawrence Jenkins, deceased, through counsel and shows the Court the following:

1.      Plaintiff Barry Jenkins ("Plaintiff") is the sole surviving parent of his child Lawrence Daniel Jenkins, deceased, ("Mr. Jenkins") and is authorized to bring this action in tort for the wrongful death of his son.  § 19-7-1(c)(1); (2)(b) and O.C.G.A. § 51-4-4

2.      Plaintiff was appointed Administrator of the Estate of Lawrence Daniel Jenkins on April 3, 2017, in the Burke County Probate Court, State of Georgia and is, therefore, authorized to bring claims belonging to Mr. Jenkins in life and belonging to his estate including, but not limited to, pre-death pain and suffering, medical, funeral and burial expenses. O.C.G.A. § 9-2-41.

3.      This is an action arising under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et

seq. This Court is vested with jurisdiction pursuant to 28 U.S.C. § 1346(b).

4.     Timely and adequate administrative claim notices were sent to and received by the Office of Regional Counsel, Department of Veterans Affairs, regarding the claims made herein.  A claim for wrongful death and a claim by Mr. Jenkins' estate were filed on behalf of Plaintiffs on March 10, 2017.  The claims were denied originally on March 2, 2018.  Thereafter, Plaintiffs timely filed a Motion for Reconsideration dated August 6, 2018.  The claims were finally denied on October 7, 2019.  The pre-suit requirements of 28 U.S.C. §§ 2401 and 2675 have been fulfilled.

5.     Plaintiffs reside in Sardis, Burke County, Georgia.

6.     At all times mentioned, Defendant United States of America ("Defendant"), through the Department of Veterans Affairs, an agency of Defendant, owned and operated the Charlie Norwood Uptown and Downtown Medical Centers (collectively referred to hereinafter as "Augusta VAMC") in Augusta, Georgia.

7.     A substantial part of the events or omissions giving rise to this civil action occurred at the Augusta VAMC located in Richmond County, Georgia.  Additionally, the location of the wrongful death is in Burke County.  Burke and Richmond Counties are in the Augusta Division of the Southern District of Georgia.  Venue is proper pursuant to 28 U.S.C. §1391(e)(2) and Local Rule 2.1(e).

8.     Plaintiff Barry Jenkins is the duly appointed Administrator of the Estate of Lawrence Daniel Jenkins, deceased, and is authorized to bring this complaint for the conscious pain and suffering, funeral and burial expenses for the deceased Lawrence Jenkins.

9.     Georgia state law authorizes claims of wrongful death for death by suicide when a

patient's preventable or avoidable suicide results from negligent medical care by that patient's medical provider. Peterson v. Reeves, 315 Ga. App. 379 (2012) [medical provider failure to commit potentially suicidal patient created jury issue of fact on proximate cause of suicide]; O.C.G.A. § 51 -1-27; O.C.G.A. § 37-3-162(a).

10.     At all times material hereto, the Veterans Administration had the right to control the time, manner and method of duties performed by the physicians, psychiatrists,  psychologists, medical doctors, doctors of osteopathy, mental health care providers and other staff, and had the right to discharge the physicians and other staff at this facility.

11.     Furthermore, at all times material hereto, the physicians, psychiatrists, psychologists, medical doctors, doctors of osteopathy, mental health care providers and other staff at Augusta VAMC who provided medical care to Mr. Jenkins were agents and/or employees of Veterans Administration and were acting within the course and scope of their agencies or employment, such that the negligence of these agents or employees may be imputed to Veterans Administration pursuant to the doctrine of *respondeat superior* and other principals of agency.

12.     Accordingly, Veterans Administration is liable for the negligent acts and/or omissions committed by its agents and/or employees at Augusta VAMC who provided medical care to patients such as Mr. Jenkins pursuant to the doctrine of *respondeat superior* and other principals of agency.

13.     Whenever in this Complaint it is alleged that Augusta VAMC  did any act or failed to do any act, it is meant that the officers, agents, or employees of the Augusta VAMC

respectively performed, participated in, or failed to perform such acts while in the course and scope of their employment or agency relationship with Augusta VAMC.

14.     Plaintiff Barry Jenkins is the father of Lawrence Jenkins, an honorably discharged veteran, who was receiving medical care by the Veterans Administration prior to and on the day of his untimely suicidal death on March 26, 2015.

15.     In March of 2015, Mr. Jenkins was a patient at the Augusta VAMC where he had been treated for chronic pain, depression, substance abuse, history of alcohol abuse in sustained remission, and Post Traumatic Stress Disorder.   Mr. Jenkins was dependent on the staff at the Augusta VAMC for medical and mental health treatment and care.

16.     According to Augusta VAMC records, although Mr. Jenkins exhibited various co-morbidities, Mr. Jenkins reported relief and was noted as doing "much better" on the anti-anxiety medication lorazepam which was first prescribed on 1/5/15.

17.     According to Augusta VAMC records, on March 26, 2015, Mr. Jenkins was seen by Danielle Suykerbuyk, Doctor of Osteopathy [hererinafter "D.O."] "one on one for 25 minutes." Mr. Jenkins is noted as 31-year-old white male appearing stated age. Alert and oriented x 4. Fair eye contact and grooming. Casually dressed. Mood "depressed." Affect anxious and tearful. Thought processes-LLGD. Speech: regular rate, volume and rhythm No SI/HI. No AHNH. Memory Impaired. Insight/Judgment — fair.

18.     According to Augusta VAMC records from March 26, 2015, Lawrence Jenkins presented to Augusta VAMC with a complaint "I don't know… I just don't feel good…" The reason for the visit was noted as a follow up on continuation of lorazepam for anxiety/insomnia. It was noted that Mr. Jenkins' father had taken control of all medications, as the father had

stated the patient has been abusing his medications.  Dr. Suykerbuyk told Mr. Jenkins that he would have to be tapered off lorazepam.  Mr. Jenkins was very upset about this, stating that it is the only thing that is helping him.  Dr. Suykerbuyk pointed out to the patient that the patient had left a distressed message on his answering machine over the weekend, so Mr. Jenkins was not doing fine.

19.     According to Augusta VAMC records from March 26, 2015, Dr. Suykerbuyk notes that Mr. Jenkins reported that he "still feels depressed."

20.     According to Augusta VAMC records from March 26, 2015, after meeting with Mr. Jenkins on March 26, 2015, Dr. Suykerbuyk requested a psychiatric consult with routine urgency.  In his request for a psychiatric consult for Mr. Jenkins, Dr. Suykerbuyk noted Mr. Jenkins having "chronic PTSD and depression who is abusing pain meds and is pending admission to the domiciliary (very low functioning, needs an IOP). Pt is currently being tapered down on dose of lorazepam due to abuse of pain meds.  Pt has h/o alcohol dependence as well. Not appropriate for continued management in PCMHI due to chronicity/severity of illness."

21.     According to Augusta VAMC records from March 26, 2015, Mr. Jenkins asked Dr. Suykerbuyk to go back on zolpidema.  Dr.  Suykerbuyk noted, "Again, explained that since it is a controlled substance that would not be an option (it didn't work consistently anyway) and that patient will need to prepare himself to be managed with non-controlled meds."

22.     According to Augusta VAMC records from March 26, 2015, Mr. Jenkins expressed fleeting suicidal ideations and a suicide assessment was completed.  Mr. Jenkins' risk of suicide is noted has "Not Imminent" with recommendations of: "Denies SI, stable for outpt management".

23.     According to Augusta VAMC records from March 26, 2015, Mr. Jenkins was prescribed a new medication of buspirone 15 mg 3 times a day and medications were changed in lowering the dosage of lorazepam to .5 mg daily and 1 mg at bedtime with plan to completely discontinue due to abuse of opiate pain meds/substance abuse history with alcohol and the dosage of bupropion SA was increased to 200 mg twice a day.   These prescriptions were filled at the Augusta VAMC and sent home with Mr. Jenkins.

24.     Mr. Jenkins returned to his home in Sardis where he resided with Plaintiff from the Augusta VAMC where he intentionally ingested and overdosed on the medications prescribed and filled by the Augusta VAMC along with an additional medication containing dextromethorphan.

25.     Lawrence Jenkins in a state of despair authored a suicide note.

26.     Plaintiff found Mr. Jenkins unresponsive in their home shortly after Mr. Jenkins returned home after having been evaluated at the Augusta VAMC earlier that day and called 911.

27.     Mr. Jenkins was taken by ambulance to the Burke County Medical Center. A Coroner's death investigation and autopsy were completed on March 28, 2015, which confirmed the cause of death as overdose death by suicide with underlying contributing causes of post-traumatic stress disorder, chronic pain and depression.

28.     At all material times, the agents and employees of the Augusta VAMC who treated Mr. Jenkins represented that: (a) they were competent to provide Mr. Jenkins with the necessary care, treatment, and services and would provide the same; and (b) that Mr. Jenkins' condition was capable of being successfully managed by them.

29.     During Mr. Jenkins' treatment at the Augusta VAMC, Mr. Jenkins suffered from a pattern of negligent medical care and systemic failures, all which contributed to and hastened Mr. Jenkins' untimely death.

30.     The agents and employees entered into a continuing course of negligent conduct, creating, implementing and enforcing dangerous practices and policies at the Augusta VAMC which deprived patients, including Mr. Jenkins, of safe, adequate, and essential care and resources to meet their needs, including, but not limited to, appropriate plans of care, assessment and continued monitoring of his condition, and appropriate medication administration.

31.     The Defendant, its agents and employees, had a duty to review all medical records including mental health records regarding Mr. Jenkins, obtain a full history, fully evaluate Mr. Jenkins and to take appropriate measures to care for Mr. Jenkins and to prevent him from endangering himself or the lives of others.

32.     At all material times, the Augusta VAMC had a duty to exercise appropriate policies so as to prevent the infliction of harm on its patients, including self-inflicted harm suffered Mr. Jenkins.

33.     At all material times, the Augusta VAMC had a duty to exercise reasonable care to supervise his agents and employees, so as to prevent the infliction of harm on its patients, including self-inflicted harm suffered by Mr. Jenkins.

34.     The Augusta VAMC had duties to exercise reasonable care in the providing medical and mental health treatment to its patient Mr. Jenkins.

35.     The Augusta VAMC had duties to exercise reasonable care in providing medical and mental health treatment to its patient Mr. Jenkins.

36.     The Augusta VAMC had a duty to exercise the applicable degree of care and skill in the treatment of its patient Mr. Jenkins.

37.     The agents and employees including but not limited to D.O. Suykerbuyk of the Veterans Administration who treated Mr. Jenkins were negligent in each of the following manners which directly contributed to and caused the untimely death of Mr. Jenkins:

a) Failed to recognize the level of physical and psychological dependence which Mr. Jenkins had on the medications he was being administered including opiates and benzodiazepines including specifically lorazepam;

b)  Failed to recognize the well-known clinical risk of Mr. Jenkins' worsening mental and physical state in response to the immediate reduction in the dosage of lorazepam and physician communicated planned elimination of controlled substances including opiates and lorazepam to treat Mr. Jenkins' chronic symptoms and chronic conditions;

c) Failed to determine that given the evidence of recent decompensation that there was a substantial and probable risk that Mr. Jenkins would take actions that would be self-injurious including risk of suicide attempt and death by suicide;

d) Failed to implement an appropriate individualized Plan of Care, Safety and Crisis;

e) Failed to recommend Mr. Jenkins for immediate in-patient hospitalization to monitor Mr. Jenkins for symptomatology withdrawal symptoms, both emotional and physical;

f) Performed an inadequate suicide assessment when Mr. Jenkins was not medically stable;

g) Found Mr. Jenkins' risk of suicide was not imminent when the clinical presentation supported a finding of risk of suicide to be moderate-severe (on a scale of mild, moderate, severe);

h) Failed to appreciate the risk that reducing the dosage of lorazepam would likely produce tremendous anxiety in Mr. Jenkins;

i) Failed to appreciate the well-known correlation between anxiety and depression and aggressive behavior towards self and others;

j) Negligently allowed him to leave the Augusta VAMC;

k) Failed to perform and adequate psychiatric evaluation;

l) Failed to perform an adequate risk of suicide assessment; and

m) Failed to properly consider need for hospitalization, supervision and monitoring.

38.      Augusta VAMC, and while acting through its agents and employees, violated the standard of care and skill exercised by medical care providers generally under similar conditions and like surrounding circumstances such as those presented by Mr. Jenkins in their care and treatment of him. Their professional negligence includes, but is not limited to, the following:

*Care Plans*

a.   Failure to develop and update Care Plans specific to Mr. Jenkins'

*Systematic Failures*

a.   Failure to provide staff with the knowledge, skills, and competencies to properly care for patients such as Mr. Jenkins;

      b.  Implemented policies on reducing or eliminating opiate and benzodiazepine combination without insuring adequate individualized detoxification, safety, crisis, care plans were in place.

39.    As a direct and proximate result of the violations of the standard of care and negligent conduct by Augusta VAMC described above, Mr. Jenkins suffered loss of life.  His death resulted in funeral expenses and burial expenses.

40.    If Mr. Jenkins would have received appropriate care, Mr. Jenkins' death could have been avoided on March 26, 2015.

41.    The negligent acts and omissions and resulting untimely death of Mr. Jenkins were foreseeable to the Augusta VAMC.

42.    As a direct and proximate result of Defendant's violations of the standard of care and negligent conduct as described above, Mr. Jenkins suffered loss of life.

43.    As a further direct and proximate result of the violations of negligent conduct by Defendant as described above, Mr. Jenkins also suffered from unnecessary pre-death physical and mental pain and suffering.

44.    Also, as a direct and proximate result of the violations of the standard of care and negligent conduct by the Defendant described above, Mr. Jenkins died.  His death resulted in funeral expenses and burial expenses.

45.    Plaintiff is entitled to bring a wrongful death action for the death of Mr. Jenkins and is entitled to recover for the full value of the life of Mr. Jenkins.

46.     The Defendant is liable to Plaintiff, in his capacity as the Administrator of the

Estate of Lawrence Daniel Jenkins, for Mr. Jenkins' physical and mental pain and suffering, as

well as his medical expenses, funeral expenses, and burial expenses in the following amounts:

<div style="margin-left: 2em;">

Medical Expenses

| | |
|---|---|
| Burke County EMA | $   665.72 |
| Burke County Hospital | $ 3,117.15 |

Funeral and Burial Expenses

| | |
|---|---|
| Joiner-Anderson-Saxon-Prescott | $ 7,190.00 |
| Sardis Baptist Church | $ 2,000.00 |
| Thayer Monument Company | $ 1,833.80 |
| Thayer Monument Company | $     79.50 |
| Burke County Probate Court | $   324.00 |

</div>

47.     To the extent an affidavit pursuant to O.C.G.A. § 9-11-9.1 is required, Plaintiffs

have attached as Exhibit "1" the Affidavit of Nathan Strahl who is qualified as an expert on the

issues raised in this Complaint.  This affidavit specifies at least one negligent act or omission by

Defendant.  The attached affidavit is not inclusive of each act, error or omission that has been

committed, or may have been committed, by Defendant, and Plaintiffs reserve the right to

contend and prove additional acts, errors and omissions on the part of Defendant that reflect a

departure from the requisite standard of care.

48.     The care and treatment rendered to Mr. Jenkins by Defendant's employees and/or

agents, as described herein and in the affidavit attached hereto as Exhibit 1, fell below that

degree of skill and care ordinarily employed by physicians and medical providers generally

under similar conditions and like circumstances, constituted negligence, and caused and contributed to Mr. Jenkins' untimely death.

49.    The affidavit of Nathan Strahl is attached hereto as Exhibit 1 and pursuant to O.C.G.A. § 9-11-9.1 is incorporated herein by reference.  Said affidavit sets forth at least one negligent act or omission by Defendant via its employees and/or agents.

WHEREFORE, having stated his complaint, Plaintiff prays as follows:

(a)  That process issue and Defendant be served as required by law;

(b)  That the Plaintiff Barry Jenkins, as Administrator of the Estate of Lawrence Daniel Jenkins, recover from the Defendant for medical, funeral and burial expenses as well as for conscious pain and suffering endured by Mr. Jenkins;

(c)  That the Plaintiff Barry Jenkins, individually, recover from the Defendant for the full value of the life of Lawrence Daniel Jenkins; and

(d)  That Plaintiff have such other relief as the Court may deem proper.

**RESPECTFULLY SUBMITTED**, This 5th day of _March_, 2020.

George Bush, Esq.
Attorney for Plaintiff
Georgia Bar No: 098442

GEORGE BUSH LAW, PC
415 Fourth Street
Augusta, Georgia 30901
706-722-1200
Email:  georgebushlaw@gmail.com